Filed 5/5/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER A. PARRAMARTINEZ,<br><br>    Defendant and Appellant. | E076734<br><br>(Super.Ct.No. FWV1502175)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Ingrid A. Uhler, Judge. Affirmed.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Alana Cohen Butler and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Christopher A. Parra Martinez appeals the San Bernardino County Superior Court's decision not to strike two personal firearm use

1

enhancements imposed pursuant to sections 12022.5 and 12022.53 of the Penal Code.[1]

We affirm.

**BACKGROUND**

Defendant's girlfriend broke up with him. Around 1:00 or 2:00 o'clock the next morning, defendant came to the apartment where the girlfriend lived with her father and demanded to pick up some of his belongings stored in the garage. He was furious to find the lock on the garage had been changed. The father went down to the garage to give defendant access to the storage. While there, defendant pulled out a gun and held it to the father's throat. He said he was going to kill the father and father's entire family. The father never actually saw the gun.

When the father returned to the apartment, he could hear defendant outside the door. He called the police. Defendant left before the police arrived, and the father gave a statement to the responding officers.

Later that day, after making calls to the girlfriend asking her to "remove" the police report, defendant convinced her to meet with him. At the meeting, the girlfriend complied with defendant's directions to get in his car, and he drove away with her. While driving, he made repeated calls to the father on the girlfriend's phone, telling him he would kill the girlfriend if the father did not withdraw the report he made to the police. The father went to the police station and reported what was happening. Meanwhile, defendant took the girlfriend to a shooting range located in a remote forested area

---

[1] All further statutory references are to the Penal Code. References to rules are to the California Rules of Court.

2

unfamiliar to her where he pulled over and told her to get out of the car. When she refused, he pointed a gun at her and repeated his request.

Once out of the car, defendant made the girlfriend walk to another area, then held a gun to her head and repeatedly told her to choose whether he should kill her or the father. Eventually, defendant turned away from her and tried unsuccessfully to fire the gun. After spending a couple of minutes "trying to fix the bullet," including removing it from the weapon, he told the girlfriend to get back in the car. He took her back to the gas station, they got in her car, and defendant drove them to her home.

Once home, they waited in the car for the father. While waiting, the police arrived in cars, with a helicopter overhead. Defendant took off and, after a high speed chase on freeways and surface streets, he was apprehended. The police found a nine-millimeter handgun in the car. The gun was fully loaded, with a magazine inserted but without a bullet in the chamber. A nine-millimeter bullet was found in defendant's pocket. The police did not test the gun to see if it was operable.

A jury convicted defendant of five counts, including simple kidnapping with a firearm use enhancement (§§ 207, 12022.53, subd. (b)) and assault with a firearm with a personal firearm use enhancement (§§ 245, 12022.5, subd. (a)). The trial court sentenced defendant to a total of 18 years in prison, which included the upper term of 10 years for the firearm enhancement to the kidnapping charge and one year, four months (one-third the midterm) for the enhancement to the assault of the father with a firearm. Defendant appealed.

3

While defendant's appeal was pending, the Legislature amended sections 12022.5 and 12022.53 to give the trial court authority to strike or dismiss a firearm enhancement pursuant to section 1385, effective January 1, 2018.  (§§ 12022.5 subd. (c) and 12022.53, subd. (h); Senate Bill No. 620 (2017-1018 Reg. Sess.; Stats. 2017, ch. 682.)  Accordingly, in addition to correcting several prejudicial errors affecting defendant's sentence, we remanded the matter to permit the trial court to consider whether to strike one or both firearm enhancements.  (*People v. Parra Martinez*  (August 22, 2019, E070694) [nonpub. opn.].)  We did not express an opinion on how the trial court should exercise its discretion.  (*Ibid.*)  We affirmed the judgment in all other respects.  (*Ibid.*)

*1.  The trial court's decision not to strike the firearm enhancements*

At the hearing on the remittitur, the court declined to strike either of the firearm enhancements based on factors considered at the time of sentencing and reconsidered at the time of remittitur hearing.

Defendant appealed.

## DISCUSSION

On appeal, defendant argues the court abused its discretion by not striking the firearm enhancements.

As mentioned above, the firearm enhancement provisions set forth in sections 12022.5 and 12055.53 were amended effective January 1, 2018 upon the passage of Senate Bill No. 620.  (2017-2018 Reg. Sess.; Stats. 2017, ch. 682.)  The operative amending language was the same for each statute:  "The court may, in the interest of

justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§§ 12022.5, subd. (c); 12022.53, subd. (h).) The purpose of the amendments was to eliminate the requirement of imposing firearm enhancements without regard to the circumstances of a crime and instead permit the trial court discretion to decide whether or not to extend a defendant's sentence. (Stats 2017, ch. 682, § 1.)

In *People v. Pearson*, Division One of the Second District held the factors the trial court must consider when deciding whether to strike a section 12022.53 firearm enhancement pursuant to the amendment are the same as those it is required to weigh when handing down a sentence in the first instance. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117 (*Pearson*).) We agree. And, because the language and purpose of authorizing the court to strike or dismiss the firearm enhancements are identical for both section 12022.5 and12022.53, we extend *Pearson*'s holding concerning consideration of initial sentencing factors to decisions whether to strike or dismiss a section 12022.5 firearm enhancement.

Included in the factors to be considered when considering sentencing on either a section 12022.5 or a section 12022.53 firearm enhancement are those expressly set forth in rule 4.428(b). Those are: (i) the effect that striking the enhancement would have on the status of the crime as a strike; (ii) the accurate reflection of the defendant's criminal conduct on his or her record; (iii) the effect it may have on the award of custody credits; and, (iv) any other relevant consideration. (*Pearson, supra*, 38 Cal.App.5th at p. 117.)

5

Also to be considered are the general objectives in sentencing (rule 4.410) as well as circumstances in aggravation and mitigation (rules 4.421 and 4.423). (*Pearson* at p. 117.) Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules. (*Pearson* at p. 117; rule 4.409.)

We review the trial court's decision not to dismiss a firearm enhancement for an abuse of discretion, that is, we will not disturb its ruling unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice. (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.) If the person attacking the sentence fails to establish the sentencing decision was irrational or arbitrary, the trial court is presumed to have acted to achieve legitimate sentencing objectives. (*Pearson, supra,* 38 Cal.App.5th at p. 116.) The decision will be upheld so long as there is a reasonable or even fairly debatable justification under the law for the court's decision. (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.)

Here, the record demonstrates the trial court considered the appropriate circumstances and exercised its discretion in a reasonable manner when it declined to strike the firearm enhancements imposed at the time of defendant's sentencing. At the outset of the remand hearing, the court announced it had given an "indicated ruling" alerting the parties it was not going to strike the enhancements based on factors considered at the time of sentencing, which it had again considered for the remand hearing. The factors noted at the time of sentencing included the mitigating circumstance

6

that defendant had no significant prior criminal history and the aggravating facts that he had made threats of great bodily injury and/or death, and that he was armed with and used a weapon at the time of the offense.

At the remand hearing, the court "appreciate[d]" defendant was apologetic but recalled he had not taken the opportunity to express remorse when he was sentenced but had instead denied using a gun and kept trying to place the blame on the victims. The court noted defendant did not merely have passive control over the firearm. Rather, he held a loaded gun to a person's head and threatened to kill them, conduct the court deemed "very serious." The court also found defendant had taken advantage of a position of trust based on the girlfriend's previous dating relationship with him. It described the girlfriend as a particularly vulnerable victim, and recounted the facts that defendant had taken her to a remote location where he forced her out of the car at gun point, then actually held the gun to her head while asking if he should kill her or her father.

Defendant posits no reasonable person could agree with the sentence imposed and, therefore, it is reasonably probable the trial court would have stricken one or more of the enhancements had it considered the following:

(i) The court had expressed satisfaction with a lesser sentence;

(ii) defendant did not have a serious criminal history and the particularly punitive sentence upended his entire life;

(iii) defendant expressed "regret" when first sentenced and made a showing of "remorse" at the remand hearing, actions which he suggests come within the mitigating factor set forth rule 4.423(b)(3), that is, the defendant voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process; and,

(iv) his conduct came within mitigation rule 4.423(a)(3), that is, the crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur.

Although defendant posits the trial court would not have declined to strike the firearm enhancements had it given proper consideration to the aforementioned subjects, the record does not affirmatively establish that the trial court failed to consider relevant sentencing factors set forth in the rules of court. Accordingly, we may presume those factors were properly considered. (Rule 4.409.)

Even if there was no presumption that the sentencing factors were properly considered, defendant would not prevail. His claim that the trial court would likely have stricken one or both enhancements if it had considered the "information" set forth in his brief is not supported by the record.

Defendant's assertion that the court "was satisfied that a shorter sentence was sufficient to fulfill the purposes of incarceration" is belied by the facts it heard arguments by the parties with respect to the length of his sentence at the time of the original sentencing hearing and again on remand, and declined to make any changes.

8

Contrary to defendant's claim, there is nothing in the record to suggest he comes within rule 4.423(b)(3). He did not cite, and we have not found, any evidence he voluntarily acknowledged any wrongdoing either when he was arrested or during an early stage of the criminal process.

Nor does the record support defendant's contention that the court ignored his statement of regret contained in the probation report at his initial sentencing and expression of remorse (made in a statement apparently submitted at the remand hearing but which is not included in the record on appeal). At the hearing, the court explained it had, at the time of the initial sentencing, sent the matter "back to probation" to give defendant an opportunity to make a full statement but defendant did not express remorse at that time. The probation officer reported defendant expressed regret about "everything that happened." Although he said he regretted arguing with the father and regretted being in a relationship with the girlfriend, he added, "[b]ut one shouldn't bring charges on someone just because you don't like him," a quotation specifically considered by the court at the remand hearing. The court appreciate[d] defendant was apologetic at the time of the remand hearing but noted "sometimes it's too late."

Also lacking in merit is defendant's argument that his crimes came within mitigation rule 4.423 because they resulted from an unusual set of events that are not likely to recur. He claims his conduct was an "aberration caused by [the girlfriend] breaking up with him and [the father] preventing him from retrieving his belongings by changing the garage lock." He goes on to say the situation "escalated" because the

9

father's complaint to the police resulted in a report, which defendant "tried to get rescinded by driving with [the girlfriend] after she voluntarily got in the car and did not take advantage of opportunities to escape or get help."  Defendant concludes that those circumstances "will almost certainly never reoccur."

What defendant's "aberration" claim fails to grapple with is that it was his own — not his victims' — conduct and reactions that caused his crimes to be committed.  It was he who reacted with fury and death threats to the inconvenience to him of his possessions being in a locked garage when he came to collect them around 1:00 or 2:00 in the morning after the girlfriend broke up with him the previous day.  It was he who decided to convince the girlfriend to get the police report "remove[d]."  And, it was he who undertook to "convince" the girlfriend by taking her to a remote location, brandishing a gun, and holding it to her head while demanding she choose between him killing her or her father.  Certainly those facts are not proper fodder for finding a mitigating factor pursuant to rule 4.423(a)(3).

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

FIELDS
J.

10